Are you prepared to hear argument in the Minnick v. County of Currituck? Good morning. May it please the court. My name is Megan Mechak, and I am here today on behalf of the plaintiff and the appellant in this case, Duane Minnick. This is an appeal from a grant of summary judgment by the Eastern District of North Carolina in Mr. Minnick's Section 1983 claim alleging that he was terminated in violation of his First Amendment rights. Mr. Minnick is an experienced firefighter and emergency medical technician who worked for Currituck County from April of 2007 through August of 2009. At the time that Mr. Minnick worked for Currituck County, fire protection services within that county were provided by various volunteer fire departments, including two of the defendants in this case, Crawford Township Volunteer Fire Department and Knotts Island Volunteer Fire Department. Emergency medical services were provided by paid employees like Mr. Minnick. At the time, however, the county was attempting to professionalize the delivery of fire protection services and possibly integrate the two systems. There is evidence in the record in this case that that caused tension between the volunteer fire departments and the paid employees. Some of the paid employees, including Mr. Minnick, were trained firefighters as well as emergency medical technicians or paramedics. During his employment, Mr. Minnick was satisfactory in his operational abilities. The record is clear that there were no complaints about Mr. Minnick's ability to do his job as either a firefighter or an emergency medical technician. Let me ask you something about the procedural posture we're in here. Are there any procedural problems that you perceive or point out? Procedurally, no. We don't believe that there are. Is there jurisdiction for this appeal? We believe that there is, yes. Did the district judge, is there some opinion where the judge analyzes the evidence on the summary judgment issues with respect to the individuals? There is not. However... I was worried if I'd missed something. No. I found an opinion that deals with the three entities. There's the two fire departments, one in the county. Correct, sir. And those were sued. And those were denied. You're appealing those? We are appealing that. You're saying there's a sufficient practice and policy and all that that they were discriminating against your man, right? That's correct. But the individuals, you sue the individuals as individuals and in official capacity? That's correct, for all of these individuals. If you try to sue them in official capacity under 1983, you can't do that, can you? Well, the suit against the individuals in their official capacity, the courts have found that that is essentially a suit against the employer. So no. 1983 is against the individual. You can't be suing them in official capacity, can you? We have sued them, again, the suit against the individuals in official capacity has been perceived as a suit against the entity for which they work in this particular case. So you'd take that, so the judge's opinion denying the claims against the county and the fire departments would cover the individuals in their official capacity. That is correct. So there, all right, we got us a written opinion in that regard. But now, is there anything, analysis somewhere, in a transcript, in all these transcripts, of the forecast evidence of yours with respect to the claims against the individuals individually? There is not, and that's part of the issue on appeal. Never been analyzed? No. So who's supposed to do that, us? How are we supposed to handle that? The plaintiff believes that the case should be remanded. Well, how is it an appealable order? If it wasn't dealt with. The court has dismissed the entire case and closed the file. Well, it's supposed to be summary judgment. I thought it was, you're saying it was dismissal. I apologize. This court granted summary judgment, closed the case, the case is... Granted summary judgment, but made no analysis. Absolutely, yes. That's what occurred. Has the court made an analysis on the point of causation? Because if there's no underlying constitutional violation, then all of the other claims against the collective entities would automatically disappear. That's correct that that's the legal standard. The court in this particular case did not analyze the causation issue. He, the court... Didn't analyze the causation issue at all? At all, no. And so... Everything else would disappear if the causation issue, I don't know how it would go, but if Presumably, if the court had determined that there was no causation, we, the plaintiff believes that that would not be an appropriate, that's an issue of fact for the jury. No, but I don't, you know, I don't know. I mean, the district court never looked at... Because we had a case which my fine colleague, Judge King, wrote, and this is at Chestnut Ridge, says this is at the outset, the record submitted in support of the summary judgment motions clearly evidences that Goldstein was suspended and later terminated for reasons unrelated to his allegations related to public safety. And so, I think that that may be the case here. There's an awful lot of evidence that this person can't get along with anybody. And so, he may have been just discharged because he couldn't get along in four or five different settings. But the district court, you know, made no findings on that and never directed his attention to that. And so, that would make the whole case, depending on what the district court finds on this critical area of causation. To me, that's the heart of it. Your Honor, in this particular case, it would be inappropriate for the judge to make a finding on causation. And the reason for that is... What's inappropriate? For him to make a finding on causation because in this case... Well, if there's no genuine issue of triable fact, it's perfectly... Your Honor, the way that you've characterized... The question that you've asked me, frankly, is the reason that there is an issue, a genuine issue of material facts. Specifically... The judge has to determine whether you've made a prima facie case on it. Whether you've made a sufficient showing to get past summary judgment. Correct. And in this case... The point is he didn't do that. We believe that we did. But the judge didn't... The judge didn't even rule on it. The judge didn't rule on it, so back to where I started, I mean... Maybe it's not jurisdictional. Because they entered an order saying it's over with, but he didn't analyze it. He did not analyze it. And we believe that had he analyzed it, again, on the causation or any of the other underlying facts, he would have reached the conclusion that a jury needs to hear this case. But see, there's a real question in my mind as to whether this gentleman was dismissed simply because he couldn't get along. And, you know, you have him... You have him being given chance after chance after chance. You go from Lower Currituck to Crawford to Corolla to Knotts Island. And it never works out in any of those places. And, you know, for example, at Crawford, there's a dispute about the incident with Lieutenant Hope. But then I came across the fact he was calling the volunteers idiots. And as a result, the fire stations, the volunteers didn't want to work with him, and the volunteer fire departments were having difficulty recruiting, getting people to show up because Mr. Minnick was on the scene. And then you have, you go over to Knotts Island, and, you know, he's switching shifts with coworkers without obtaining approvals or supervisors. He isn't showing up for work on time. And he parks his vehicle right in front of the Knotts Island station. And, you know, that may seem like a little thing, that somebody doesn't comply with the parking rules, but it's the kind of thing that really sets people off. When everybody else is complying with the parking rules and is parking behind back, and somebody just whisks his vehicle right up into the front of the station at a place he's not supposed to be. And then he's moving furniture all around when he's told not to. Well, you can say, well, that's a small thing, but when it's a place where people work, one person's parking where they shouldn't be, and somebody's moving furniture around when they're told not to, then, you know, that upsets people because it's where they come to work every day. And if it was just one place, but you look at all these different defendants, I mean, I've never seen so many defendants in a case, and what I thought is, gosh, this person can't get along with anybody. And I understand the ground on which Judge Boyle ruled, but I suspect that's the view that he had about it, was that nothing ever suited. Nothing, nothing ever suited. And the point further is, and I don't want to take your time, but there is a real question here. If you work with people, if you work with people, you can get a lot done. And if you respect the people around you, you can get a lot done. If you just realize that everybody comes to the table with something valuable to offer, but this person didn't approach it this way, he was too good for everybody. He knew it all, and nobody else knew anything. And that is a surefire recipe for not getting a thing done because nothing gets done without cooperation and without people respecting one another and realizing that the other person at the table probably has just as much to offer as you do. And that, I think, was probably Judge Boyle's basic problem with the case, was that it didn't have a thing to do with speech and it had everything to do with a perennial personality conflict that persisted from setting to setting to setting. Your Honor, if I may briefly respond to that. In this particular case, that's a question of fact because the issues that Mr. Minnick had, and there's ample evidence of this in the record, the issues that Mr. Minnick had with the volunteers were not personality conflicts. The issues were Mr. Minnick raising safety concerns. What was going on in the county, and that's why I started with this, is extremely important in this case. You have to keep in mind that as this was happening, the county was trying to professionalize its delivery of services. Mr. Minnick came in. He was attempting to found an IAFF local, which is a labor organization that looks after the interests of paid firefighters. He was coming in, and he was the face of the new professionalism of this department. And so from the get-go, again, as a vocal IAFF member— He sure rubbed everybody the wrong way, though, didn't he? I would— No question, he couldn't get along with anybody. Well, I think that Mr. Minnick was trying to bring the department's standards up with respect to safety, with respect to how things are done. I think to analyze this case, we have to consider the manner in which Judge Boyle addressed each of the defendants. I mean, there are official capacity claims, some of which you have the individual, effectively, official capacity, and individual claims. And, I mean, Judge Boyle dealt with the VFD defendants separately from the Curritip County ones, and then he dealt with Scanlon and Carter. And there are some issues there in terms of the way in which he went about them individually or differently. And I think to be able to talk about these issues is— You really can. It's difficult to just say, we're going to just talk about causation in general as opposed to how it relates to each of these defendants. Because the word custom and how things are done, final policy, making decisions, you haven't said one word about that. And I sort of had the impression that's what this case was about. Yes, and I will, if I have the opportunity to on rebuttal, be happy to address those issues. And I see that I'm out of time, so unless there are further questions, I'll address that other issue on rebuttal. Are you Ms. Hughes? Yes, sir, I am. We're pleased to have you. Thank you, thank you. Perhaps when you start out, if you can help to put this in a posture of how the judge analyzes the cases as to the defendants from an individual capacity and an official capacity, and how we view that, that helps. Okay. Because, I mean, if you could address Koratuk County separately from the VFD defendants, from Scanlon and Carter. Sure, Your Honor. And those three sort of help, at least me. Okay, I will do my best to respond to those questions. May it please this Court, excuse my voice, my name is Jackie Terry Hughes. I do represent Koratuk County, Michael Carter and Daniel Scanlon in this appeal. I think Your Honor's had it exactly right when you were talking about some of the glaring and obvious facts in this case with respect to Mr. Minnick, and more importantly with respect to the causation. And to your point, Judge Wynn, the analysis with respect to the individual defendants is both important and relevant as well as the facts with respect to the individual defendants as well as with respect to what Mr. Minnick has shown with respect to the county. Without wanting to belabor the facts, I do think it is critical that the Court keep in mind that while I think one of Your Honors had mentioned Mr. Minnick was fired for not getting along, I think the fairer statement would be Mr. Minnick was fired for his multiple failures to follow county disciplinary policies, or county policies. And this is department policies such as showing up for work on time. Mr. Minnick didn't show up for work on time not once but twice. He is an EMT firefighter. He is out in a remote volunteer fire station with one other paramedic. The other side indicates that the VFD defendants, the District Court, erred in dismissing their claims because the evidence showed that there was this custom of discriminating against union members who had engaged in protected speech. Would that be, if the evidence in fact showed that, would that be a basis for a 1983 claim? Your Honor, not. I'm going to let my colleagues speak with respect to the claims as against the volunteer defendants, but certainly as it concerns county liability or liability on behalf of Mr. Scanlon or Mr. Carter, there is no evidence. The other side says that insofar as the county there that the District Court improperly held that it couldn't be liable to terminate because the county manager was not the final policymaker. Yes, Your Honor. If, in fact, he was, then would there be a basis? Your Honor, there wouldn't be because, number one, Mr. Minnick cannot point to what's absent in these briefs is any evidence directly identifying Mr. Carter or Mr. Scanlon as violating his constitutional rights. And that arises from where? Well, that arises, that's in the record, Your Honor. There is a... Is it a state law, a county regulation? Well, with respect to... This Court has certainly analyzed with respect to the decisions concerning final policymakers and finding individuals as a final policymaker that state law rules. And there is very clear North Carolina statute... I mean state. You can't consider the custom or other things that are involved, extra statutory things? Your Honor, you can, but in this case, I think what's incumbent upon the Court is to look at what we do have in the state and what the county followed, what policy... But that point is clear, and that is that you don't just look at the statutes and what's codified. You can look at customs and other things. You do, Your Honor, and I think the facts in this case are very clear. And all the record evidence is very clear that Mr. Scanlon followed the personnel policy that was created and implemented or effectuated by the Board of Commissioners. The personnel policy itself has a resolution attached to the back where the Board of Commissioners is specifically taking responsibility for that document. Mr. Scanlon has admitted through record evidence, his testimony, and his affidavits that at no time did he create such a policy. And what Mr. Minnick's counsel is trying to do is sort of expand the scope to try to find some way to hook the county... The way I get at this is the sequencing is important, and some of the concerns that Judge King raised resonate with me. If there's no genuine issue of fact... Yes, sir. ...as to causation, we don't get into these tricky issues of custom and practice and everything. Exactly right. You know, for the reasons Judge Wynn indicates, those can be a little bit trickier. But what I don't understand, and I think this was Judge Boyle's view of the case, was that it didn't really have anything to do with free speech and that kind of thing. What it had to do was, they gave him chance after chance, transfer after transfer to four or five different locations, and at each place, some of the same personality problems kept cropping up. And finally, after the fifth chance, they said goodbye. The Knotts Island experience was the straw that broke the camel's back. Yes, sir. And you can affirm a district judge on any basis in the record. Absolutely. And the policy and custom stuff is very tricky, and the Supreme Court hasn't made it entirely clear. But when you go through the record, it isn't just one thing, it's a bunch of undisputed things. That's exactly right, Your Honor. About the disciplinary infractions. I mean, I don't know that it was disputed that he called the volunteer fire people idiots. And again, you know, he just looked down his nose at everybody. I mean, his word, you know, he was the one and only word about things in these fire departments, and if you didn't agree with him, you didn't have anything to say. Exactly. And that's the problem, I mean, that's what the impression that the record as a whole lives with you. I mean, Your Honor, we completely agree that this case rises and falls 100% on causation. We think Judge Boyle recognized that. And with respect to the operative facts on causation, I think that, you know, there's lots of allegations out there about who said what and what he told to various other individuals in some of the volunteer houses, what they said to him. But as it concerns the county, as it concerns Chief Carter and County Manager Scanlon, it is undisputed in this record that the county followed its progressive discipline policy. And what's more important, I think, for this Court to keep in mind, this is a First Amendment retaliation case. Mr. Minnick is claiming his union association and his union speech caused these write-ups. And what's really critical that I would like to get across, Your Honor, is that... There's a problem with the union thing because at Knotts Island, he wasn't undertaking any union activities. And at Crawford, for example, the president of the Crawford Volunteer Fire Department had been a Teamsters union steward for years. And the volunteer members were union members. And the Volunteer Fire Department had made room for the local Fraternal Order of Police to hold its meetings in the department. And Daley, who was the chief of the Crawford department, invited the union to join with the department in the fundraising relay. And he allowed Mr. Minnick to place union application cards at the station. And you get it, you know, you get to this, as time after time, the members or the management of Crawford are union members themselves. They hold relays with the union. They say, come on, use the facilities for union meetings. They say, place your union application cards at the station. And, you know, how does... I mean... Your Honor, we completely agree and that the evidence is even less as against the counties. And Chief Carter and both Chief Glover are former IAFF members, and Chief Carter was actually active retired. So this is a county, due to its proximity to the Virginia state line, that has a lot of individuals that used to work, actually, in Virginia. So there's a lot of IAFF members, quite frankly, in the Currituck County Fire and EMS Department. If they wanted to get rid of him, they would have said, you know, they'd choose some pretext to get rid of him right after he didn't get along at Lower Currituck. They would have said, goodbye, you're out of here. But no, they didn't do that. They said, you deserve a second chance. And so they let him go from Lower Currituck to Crawford. And then when things didn't work out there, they went from Crawford to Corralo. And then things didn't work out at Corralo, they honored his request and transferred him to Knotts Island. And what happened after the fourth or fifth stop? The problems multiplied. Not the free speech problems, not the union problems, because he wasn't engaged in any union activity at Knotts Island. The record's clear on that. But after all of these different chances, what happens? Are their furniture being moved? Not showing up for work on time? Volunteers refusing to come to the station when he's around? He's parking his vehicle in a place that's just a thumb in your eye? You know, he said, I'm parking my doggone vehicle where I want to park it. And that's not disputed. And this is after the fourth or fifth chance, warning after warning after warning, transfer after transfer after transfer, at his request. And if this is the reason, after the county follows his disciplinary policy, and what's more, he can't point to anybody else that was disciplined for union affinities or for free speech actions. Normally, in these kind of situations, a plaintiff has always been able to say, look, this is happening, it happened to so-and-so, it happened to so-and-so, it happened to so-and-so. But he can't point to one other person where he even contends the county has taken these retaliatory actions. And there were loads of union members in that thing, including people that worked with Minnick. Was retaliation ever taken against the union members that worked with Minnick? No, it was not. That's right, Your Honor. That's exactly right. His two partners were union members during some point of their tenure with the Currituck County. And if you put the Gordian Knot and get to this issue of causation, then you don't need to go into the swamp of what's a custom and what's a policy. Your Honor, I completely concur. Let me ask the question, because I need some clarification in terms of the judge's order. He did go into the swamp, didn't he? I mean, his order goes into that swamp. Well... He doesn't go very much into causation at all. And I'm trying to find in his order where he is applying the causation standard here and where those words are arising from this order. Right, Your Honor. It is dealing with the liability and the customs, the practice, and then it goes into the policymaking decisions, and then he ends it up in saying, therefore, he's failed to demonstrate in necessary involvement in policymaking authority. And I know you represent the county here, but dealing with it in the same way. And I don't disagree about this causation issue. I think it's all good, but I don't see it in Judge Boyle's order. Well, Your Honor, I agree. It is not in his order. You'd like for us to just rewrite the whole thing. So we get to do his job? I mean, to get here, and I mean, all that sounds reasonable, but it seems like we're in appellate court, and I'm trying to see if what is here was correct as an issue of law before us. Is this the basis? He gave forth the basis in this order and this fine discussion, and it goes on, and I've been scratching my head saying, where in the world has he mentioned any of this? Right. Has he? I don't think you'll find the word retaliation. So his order's no good to us. We didn't need his order. All we needed was him to say summary judgment, and we can just say there's no causation. Yes, sir. I was going to say that. Under 52A3, Judge Boyle did not and does not. All we need to look at is the judgment that he said to grant summary judgment to everybody. I think it's very clear. Then we need to create, take your brief and create how it should get there. Yes, Your Honor. Under 52A3, we don't think Judge Boyle needed to and does not need to articulate every reason for his decision-making. Yes, it would be... The point you're making is that the evidence is in the record here to affirm the district court order. Absolutely, Your Honor. I think the evidence is overwhelming. And you take the further point that his order isn't much good to us. Well, Your Honor... He wrote this long order when all he had to say was summary judgment, granted. Your Honor, I... Causation is a problem. End of story. But he didn't say it one time in there. We got all this stuff here that has nothing to do with what we've been drilling you on. Discussing with respect to causation, but as Judge Wilkinson pointed out, this record... I agree. It's a good question, but I'm just perplexed that it's not in the judge's order at all. And again, Your Honor, I would, again, respectfully suggest to the court that it simply doesn't have to be. That's not a reason to send this back down because you don't find that issue in the order. In a lot of cases, this would create real problems for us, this kind of procedure, wouldn't it? Well, I don't think it does... You're saying it doesn't create one here because we can do the work and figure it all out. And, Your Honor, I'm not asking... What's that? No, I'm just going to let you finish. The process is somewhat troubling, but that... Okay. Your Honor... The other folks there have got some time, too. Yes, sir, they do. And unless this court had any other questions, I wanted to thank you for your time, and I'll cede the bench to my colleagues. You are? I am Paul Derrick, Your Honor. All right. Representing Crawford Volunteer Fire Department. Pleased to hear from you. Chief Daley. After your questions and Ms. Hughes' responses, I don't want to beat a dead horse. In our view, the judge did get it right. He didn't articulate in his order, the way I would have liked him to, that this is all about causation. In the case of Crawford and Chief Daley... When you say the judge got it right, you mean by seeing summary judgment? Summary judgment. He didn't open his mouth... He got it right, but he didn't explain it. He got it right. And you're here to explain it, that it's really just causation. It is causation. If I had written the order, I might have written it differently. But, yeah, I don't think he needed to get it... But you're not asking us to be creative or anything like that. All you're saying is that you can affirm a district court on an alternate ground, if that ground is supported by the evidence in the record. And you're saying that the evidence in the record here is really pretty overwhelming about both the difficulties that this individual experienced, the absence of any other individual who was terminated for any kind of union sympathy or free speech, and the fact that they gave him chance after chance after chance after chance. When you read the record and get into the record, you're saying that there's an alternate basis for affirming the judgment below. I couldn't have said it better myself, Judge. That's exactly right. The judge didn't need to get into everything he got into. As to the Crawford defendants, there is no evidence of any action that they took against Mr. Minnick in any way, shape, or form. This custom and policy stuff, don't you think it's a swamp? You have some down in your area. We have quite a few swamps, and this is right in the middle of them. It is, and there's no need to go there because of the causation. But even if you go there, there's no evidence at all in the record of a custom and policy by the Crawford defendants to do anything against union members or people who speak out and exercise their First Amendment rights. Not a scintilla of evidence about that. So, yeah, the judge didn't need to go into that at all. Causation is what it's all about, and there is none as to the Crawford defendants. But you don't disagree with anything that he said about that. You don't disagree with what the judge said. No, I don't disagree with what he said. You would have done it differently. I would have done it differently, and to the extent that Mr. Minnick takes issue with, well, the judge didn't put this in the order and didn't put that, the judge, as the Supreme Court and the Fourth Circuit have found, the judge is not required to make findings of fact or explain everything. Well, you can't make findings of fact in a summary judgment. You've got to accept the facts in the light most favorable to Mr. Minnick and then go from there. He's given the facts, but that may be just semantics. And I think implicit in his decision is the causation argument. But usually they analyze the basis of the claims a little bit better. Again, I may have written the order differently, but I think he got to the right result, and for the reasons we've stated in our brief, which I'm not going to sit up here and regurgitate, I think this court can affirm it. Based on the evidence that is in the record, the undisputed evidence that is in the record. You're not asking us to find facts. You're asking us to look at a lot of undisputed things. I mean, there are some disputed things. I mean, I think the incident with Lieutenant Pope, that was kind of a fight, and who's at fault there, I don't know. And, you know, maybe that's kind of a tribal thing. But at the end of the day, it doesn't matter, because there's no evidence that Lieutenant Pope took any action against Mr. Minnick because of that. There's no evidence that Mr. Minnick didn't, as he admitted. He voluntarily asked for a transfer after that took place. The people who made the decision to approve that transfer, the county supervisors, said, nobody at Crawford had anything to do with our decision. You know, the point is, I'm not sure. You know, going into person after person, and entity after entity after entity, and getting into this issue and that issue, some of which are, you know, you've got different pronouncements by different courts going all over the lot. You know, whether we should undertake rolling that big rock up that hill, when at the heart, the record just isn't there with respect to the issue, which is at the core of the case. I come back to the Chestnut Ridge case, where we cut the knot on the issue of causation. That's correct. And whether you believe Chris Pope's version of what happened that day, or Mr. Minnick's, of what they were fighting about, it doesn't matter, because nobody says it had anything to do with union activity or First Amendment speech. It was over, are we arguing over where the spray paint is so I can mark tires, or are we arguing over you insulted me by telling me I wasn't qualified like your supervisor is. At the end of the day, that's all you're fighting about, and there's still no causation. And this record has all of the evidence that was presented in this case? It has all of the relevant evidence, certainly, and I think just about all the evidence, period, that was presented in this case. And there is no evidence whatsoever to show union animus, some type of negative feelings toward union in it? I will not say that. There is animus toward a union by various people. In other words, there's nothing in the record that a reasonable jury could conclude otherwise in so far as causation on this? No, not as to causation. And if there is, then you lose on that. If there was a dispute of fact... There's something in this record that shows any... that a reasonable jury can conclude otherwise, you lose on causation. Yeah, if there's a dispute of fact as to causation, we lose on that, that's correct. But union animus... That's all the evidence. But union animus for that more is unlawful, Your Honor. All right. Thank you. Thank you. Mr. Doyle. Thank you, Your Honors. May it please the Court, I'm Jeff Doyle, and I'm here today on behalf of Knott's Island Volunteer Fire Department, Terry King and Jared Van Auker. I'm really largely in a similar position to Mr. Derrick and his clients in terms of the arguments to make. Your Honors have seized upon the factual issues as to causation already, and I'm not... Unless there are questions about the facts with respect to my clients, I'm not going to belabor that because it's clear that Your Honors have reviewed the record and the depositions. One of the issues that has been discussed quite a bit in the questioning between counsel and the Court as far as what to do with the order that Judge Doyle entered and what should this Court do with that in terms of the most efficient way to achieve the correct result. In the defendant's brief, this is in a footnote at page 37 of our brief, there were some cases cited in part by this Court and then also a Supreme Court decision that go to the issue essentially of judicial economy, that it's more efficient for this Court, has been held in the past, to review the record and reach the holding, even on matters that the Court below may not have discussed, than to send it back down and go through that same process of having the Court do it below. Specifically, Supreme Court, the SEC versus Chenery Corporation case, 318 U.S. 80 was cited and then some unpublished decisions of this Court which applied those same principles to other cases in looking at the most judicially, judicial economy and the most expedient way of handling matters. We can do it that way, but it's more workforce. You've got to understand that too. We've got these law clerks around here. We've got other things that need work too. Certainly. The difficulty I have sometimes with that proposition is I like to see it applied consistently. I mean, there are a lot of cases that could be done in and we say, no, you didn't bring it up or no, that wasn't raised or no, that wasn't the basis upon which the trial judge relied upon and I sometimes find it difficult discerning when is it done and when is it not done. And when I see an order that has been written and it has all of this analysis in it that deals with everything in the world, I don't see the word causation leaping from it much less giving, well, maybe it's there to some extent, but it looks like even the basis he gave for it, I'm not sure is correct in terms of the standard he used for the causation was correct. But nonetheless, we can take the record and say, well, Judge, step aside, we'll do this for you. I agree, it's not ideal as it's written. As Mr. Derrick said, had we written ourselves... But there is work to do. I mean, there's one thing to do it when the issue is just glaring right there in front of you. There's nothing there. There's another thing to do it when you've got to go through that analysis and you really do have to determine, well, was there anything against the unions here in terms of the allegation here? And we take the... I suppose in summary judgment we can take if it's sworn, certain testimonies and certain statements can be taken as true. You know, it creates... I think it creates a problem. It's a pretty easy thing to say, Judge, just go back and do that and make it nice and neat for consistency purposes if nothing else other than I just find it difficult doing that sometimes as an appellate court because we don't do it in every case. I think that's pretty clear. And I can't sometimes figure out why not and why do it. I agree, Your Honor. I think with respect to my clients, with the Knotts Island folks, there's really, there's no evidence that they took anything, any action against him. First of all, that they had no authority to take any disciplinary actions including termination or any other things. All they could do was report to Mr. Minnick's chain of command with the county. But furthermore, all the evidence appears to show that they took no negative action against him until the point that he was continuing to violate their house rules and endanger safety by parking his vehicle in front of the bay door which had there been an emergency call during the hours that his vehicle was parked there, they would not have been able to get the emergency equipment out to attend to the call. And so that was the basis for complaining about him at the time. When he was first going to be transferred in, the Fire Chief Van Ocker was notified that he had had some problems in the past and Van Ocker said, no problem, you can send him here. So I mean, if they had had some animus against him or against the unions, I don't think they ever would have said it was fine for him to come in the first place. But why Chief Van Ocker was sued when all the evidence shows that Van Ocker bent over backwards to help him do things that other people didn't want to do is beyond me. If your honors have any questions about the facts of the evidence, I'm happy to answer them. I see that... Oh, I can't read the clock. I thought my time had expired, so I do have some more time. Bob, do you have any questions? No, I have none. Jim, do you have any questions? Nope. The only question I had, they all live in Raleigh and I'm wondering why none of them are out on that out-of-banks out there in Curtick County. That's okay. Thank you, your honors. Mr. Meech, I'd be pleased to hear from you. Could I ask you just a bit about some of these individual VFD defendants? Mr. Daley, who was at Crawford. Certainly. Fire Chief and then King and Van Ocker. Yes, sir. President and Fire Chief of KIVFD. They didn't take any... I didn't think they were even capable of taking any kind of adverse action. Your honor, the evidence in this particular case, the allegations that Mr. Minnick has raised against the volunteer fire departments and the individual defendants, is that, correct, the individual defendants that were associated with the volunteer fire departments, they could not terminate Mr. Minnick. However, what is clear from the evidence and the record in this case, is that one, Chief Carter, as counsel just stated, he did inform Mr. Van Ocker, for example, that Mr. Minnick was coming. And, in fact, the evidence indicates that if the volunteer fire department had said, no, we don't want the guy, he would not have been transferred to that station. Additionally, the evidence indicates that there was back and forth between the volunteers and the... Doesn't that happen all the time, where the immediate supervisor makes recommendations to someone higher up the chain? I mean, this happens a thousand times a day in every company in the United States, where someone's immediate boss makes a recommendation up, and that... But they themselves were absolutely incapable of taking any adverse action. But what's wrong with them simply sending along their impression of things? It's their duty to do so, isn't it? In this particular case, what's wrong with it is that had, for example, Mr. King not sent the letter to Alicia... Called Alicia Lane and sent the letter to the county officials, the department would have taken no action against Mr. Minnick. The department was unaware until Mr. King made this request, in which he said, I want this person to be terminated, and then testified during deposition that it was his expectation that the county would listen to him, that it was his expectation that they would do something as a result of his complaint. That's what got the ball rolling. In the case of the Crawford fire chief, Daley, and Mr. King and Mr. Van Ocker, he'd worked at previous places before they even accepted him, but yet they presumably knew something about him, and they didn't object to his coming there. They did not say we don't want him to be here. There is no evidence in the record that they embraced him or welcomed him. They were willing to give him a chance. They did. They did say that they were willing to give him a chance, but the contract says that they will do that. The fact remains that in this case, with respect to the issue of causation, there's a question of fact about whether Mr. Minnick's behavior, whether he was terminated because of his protected speech or whether it was for some other reason. Well, you say there's a question of fact, but some of these things seem to be undisputed. I mean, the number of different places he went, the fact that there's nobody else that he... There are other union members and other people raising safety concerns, but they never get this chart. There is no evidence that there was anyone other than Mr. Minnick who was raising the union. He was the president of the local, and there's no evidence that anyone else was raising the safety issues with the same level of activity that he was, that they were doing it as frequently or as strenuously or as assertively as Mr. Minnick was. Did he call the volunteers idiots? He did. If he did, he did it in a... He denies it. He says that he didn't. I'll leave it at that. Did he park his car in a place where the emergency vehicles couldn't get to it? He did not. He did park his car in a location that the volunteers did not want him to park his car, but others also parked their car there. It would not have prevented an emergency response based on the information in the record. Did that comply with the parking policy? At the time, he was in violation. However, again, other people parked their vehicles there as well. He was not the only one. Did he say that he was in violation of the parking policy? He was, but other people were treated differently than him. It was let go, but with Mr. Minnick, he was terminated. Was he asked to move? I don't believe that he was prior to the time when the complaint was issued to the department. Did he come to work on time? Except for the two occasions that he was disciplined for. Is there any dispute over the fact that on those two occasions he came to work late? No, but there is a dispute of fact with respect to whether he was terminated for that reason or terminated for his union involvement because others were also late and they were not terminated. They were not placed on a final written warning. But if you, I mean, if you work for a fire department or a police department and, you know, you've got the possibility of an emergency, isn't it important to be at work on time so you can respond to an emergency? Suppose a fire alarm had gone off when he was not at work, when he was supposed to be and the fire department was shorthanded. The fire department, in this case, first of all, there's no evidence that that happened, that the department  to an emergency or was delayed in responding to an emergency because of Mr. Minnick's lateness. The fact is there are other people that were late. Frankly, there's evidence in the record that there were other people who were late a lot more often than Mr. Minnick was, but they are still employed by the department. They didn't engage in the types of... Is there any other person that's been given four different chances that's moved from Lower Currituck to Crawford? Often at his request, which was honored, he wanted to move from Coralla, for example. Yes, the Coralla station. Being sent there was a punishment. It was two hours away from his home, so he wanted to move to a location that was closer to his home. I thought he wanted to move from Crawford. I'm sorry? I thought he wanted to move from Crawford. Because he had been there had been a verbal incident with Mr. Pope. The thing that you have to remember is that Mr. Minnick, as a firefighter, the expectation was that he would respond to fire emergencies. He needed to trust the individuals that he was working with. So, again, he did agree and acquiesce to move, but at the same time, after the incident with Mr. Pope, which the department ratified by saying, you know, this is not our problem, there's nothing we can do about this gentleman behaving unprofessionally on an emergency scene, he didn't really have much of a choice to ensure his own safety. As we approach this case and we move toward the causation issue of which the opposing counsel has indicated that the judge's order really does not address, this joint appendix, as I understand, is quite extensive. It's about 4,000 pages. I believe it is. The other side of the set is all the relevant stuff here, but, you know, even in just a cursory look, it looks like to me a lot of deleted pages from those, it could probably be bigger. I don't know. I mean, you need to represent to me as to whether this is all the evidence, because when we get in the business of going back to determine causation, to do it right, you've got to go back through this whole record and do that job that was not in that order in terms of that particular issue. Is there, I mean, when I look at the depositions, that there's some that start at page 2 and then it kicks on up to 100 and something. There's something, I mean, is that just administrative stuff, or what is it? No, it's not just administrative stuff, sir. Your Honor, I would say that the parties certainly, as you can tell by the 4,000 pages that you have in front of you, thoroughly, thoroughly brief this. However, what you are getting into on causation is still a question of fact and a characterization, again, of the facts in this case. Well, there's not much question of fact if there are no facts in it that go against it. If all the evidence is pointing, as has been indicated from the questioning, if you go and you cherry pick or not necessarily cherry pick, just look at what's there and say, did this happen? Did he park? Did he do these things? Then you don't have that question of fact. So that's where this thing is leading is what I'm trying to say. But for us to do it, I want to make sure we got all the evidence here. And I'm not necessarily interested in another 2,000 pages to read. But if it exists somewhere, I'm not sure we are equipped to do that. I don't believe that it would be appropriate for you to look into the issue of causation because as you've heard... You don't think it would be appropriate for us to? No, the lower court didn't get into it. It's a factual inquiry that a jury needs to get into. You're brought to appeal. Because, again, we certainly did, and again, on the grounds that, as you were discussing with counsel, the grounds that are contained in the judge's order, which I didn't really get to discuss, but that hopefully we thoroughly discussed in our briefs, that's incorrect. That legal basis is incorrect. And again, some of these issues were dealt with below, and they were implicitly rejected. We can defer on alternative ground if we want to. And we can get the entire record. It's all available to us. Absolutely. These are just the excerpts that you all decided we ought to see now. Absolutely. We can go back and get the other 10,000 pages of whatever it is that's in the record of this case. Certainly, you could do that. But in order to do that, you're going to have to... We can defer on any alternative ground we want to defer on if it supports purpose. But by... Again, of course, you can... You haven't... There are cases where you've censored that. Maybe you should have gone back to the district court before you came up here and said, you haven't ruled on everything yet, but you didn't do that. No, we didn't do that because... Because the court had this argument of causation in front of him and he didn't rule. What troubles me is the things I was ticking off, which was whether there was some other person involved, whether he was given four or five chances, whether he showed up for work on time, whether he was parking in the right place,    That's the point. Your answers were, well, there were other people where there was some other person involved, but they're not disputed. That's the point. Your answers were, well, I don't know who those other people were. They were never... You know, they weren't in the brief. It's just that, well, there were other people. There were other people, but I... It wasn't disputed that he had four or five chances. It wasn't disputed that no other individual comparator   a burden of establishing an issue of tribal fact and you should have identified somebody that said, all right, here's the issue of tribal fact and you should have identified   whatever failure or frailty or whatever that fear is so and so he was doing or she was doing the same things and they weren't dismissed. But instead, what we got is some vague, oh, there are other people and these infractions, they aren't disputed that he didn't show up for work on time twice and he was parking in the wrong spot and he was moving furniture around without permission and he was changing shifts without permission and this is after a long period where they go along with him and say, we'll give you chance after chance after chance and you want us to get into all of this different stuff which is murky to say the least when they're undisputed issues of fact the undisputed matters of fact on the points that you and I have been over. Sir, I don't believe that there are those matters of fact are undisputed. If I may briefly respond in no amount of time but, for example, again, you've asked me is there a comparator? No, there's not. Mr. Minnick was the first president of this organization. There was no organization until Mr. Minnick came to Carrutuck County and started it. So, no, there is no other union in this state. So, maybe so, but if that were the case, they would have gotten rid of him at the start. We've been over the fact that the Crawford president was a former union steward. We've been over the fact that the union authorization cards were placed in the fireplace, were placed in the fireplace.  there are other activities at Knox Island according to his partner. Sir, with respect to the other unions that were involved, again, this is why I started out discussing the context of this case, which is the IAFF union, which is not a Teamsters union, which is not any of these, an FOP union. The IAFF union was a specific union designed to assist firefighters, and so bringing in an IAFF union versus any other kind of union was the sticking point in this particular jurisdiction, again, because you have the IAFF union,    union       an IAFF union versus any other kind of union was the sticking point in this particular jurisdiction, and so bringing in an IAFF union versus any other kind of union was the sticking point in      the question gets asked, well, why was this union built in Florida? The answer to that question you always say all the time is that this union was        you always say all the time is that this union was built in Florida. The
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.